UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FLIGHTS OPTIONS, LLC, *et al.*, | ) | CASE NO.: 1:26-cv-01028 |
| | ) | |
| Plaintiffs, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| v. | ) | |
| | ) | |
| ALBERT J. DWOSKIN, *et al.*, | ) | **OPINION AND ORDER** |
| | ) | |
| Defendants. | ) | |

Before the Court is Plaintiffs Flight Options, LLC and Corporate Wings, LLC's (collectively, "Plaintiffs") Motion for Remand. (Doc. 6.) For the reasons stated herein, Plaintiffs' Motion for Remand is GRANTED. All other pending motions are DENIED as moot.

## I. BACKGROUND AND PROCEDURAL HISTORY

### A. Factual Background

Plaintiff Flight Options, LLC ("Flight Options") is a Delaware limited liability company with its principal place of business in Cuyahoga County, Ohio. (Doc. 1-2 ¶ 1.)[1] Plaintiff Corporate Wings, LLC ("Corporate Wings") is an Indiana limited liability company with its principal place of business in Cuyahoga County, Ohio. (*Id.* ¶ 2.) Defendant Albert J. Dwoskin ("A. Dwoskin"), a Virginia resident, is the CEO of Defendant A.J. Dwoskin & Associates, Inc. ("Dwoskin, Inc.," and collectively with A. Dwoskin, "Defendants"), a Virginia corporation with its principal place of business in Virginia. (*Id.* ¶¶ 3-4, 7.) Dwoskin, Inc. owns a Hawker

[1] Citations to the Complaint are to the paragraph number assigned therein. All other citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

Beechcraft Model 400A Nextant Aerospace 400XTi ("Aircraft"), a twin-engine private business jet. (*Id.* ¶ 6.) On or around July 8, 2021, Corporate Wings and Dwoskin, Inc. entered into an Aircraft Management Agreement ("Agreement") where Corporate Wings would provide aircraft management services to Dwoskin, Inc. (*Id.* ¶ 10.) The Agreement had an exclusivity clause providing that Corporate Wings had the "exclusive right to market the Aircraft for charter under 14 C.F.R. Part 135." (*Id.* ¶ 13; *id.* at 26.) The Agreement also provided that Corporate Wings would "[c]ause all charter flights to be operated by Flight Options, LLC," which holds an Air Carrier Certificate under 14 C.F.R. § 119.5. (*Id.* ¶ 14-15; *id.* at 26.) Defendants, on the other hand, do not hold an Air Carrier Certificate under 14 C.F.R. § 119.5. (*Id.* ¶ 19.) Nonetheless, between 2022 and 2023, Defendants chartered at least two flights ("Charters") during the term of the Agreement outside of their relationship with Corporate Wings. (*Id.* ¶ 16.)

### B. Procedural Background

This is the not the first time the parties have been in litigation over the Agreement. In 2025, Dwoskin, Inc. sued Corporate Wings in the Northern District of Ohio for a contract dispute involving the Agreement. *A.J. Dwoskin & Associates, Inc. v. Corporate Wings, LLC*, Case No. 1:25-cv-00210 (the "Contract Dispute"). On March 31, 2026, Dwoskin, Inc. and Corporate Wings had an unsuccessful mediation. (Doc. 1 ¶ 3.) A week later, Plaintiffs[2] initiated this lawsuit in the Cuyahoga County Court of Common Pleas. (Doc. 1-2 at 14.) In their complaint ("Complaint"), Plaintiffs assert three causes of action—tortious interference, breach of contract, and common law indemnity. (*Id.* at 18-20.) Plaintiffs claim A. Dwoskin and other individuals (the "Doe Defendants") intentionally procured a breach of the Agreement and Corporate Wings'

[2] Flight Options is not a party to the Contract Dispute.

exclusive rights by marketing and facilitating the charters when they were aware of the contents of the Agreement and exclusivity clause. (*Id.* ¶¶17, 24-26.) Plaintiffs allege Dwoskin, Inc. likewise breached the Agreement by marketing and chartering the Aircraft outside of Corporate Wings' exclusive rights. (*Id.* ¶ 33.) Because Defendants do not hold an Air Carrier Certificate, Plaintiffs claim the Charters were illegal and Flight Options could face liability as the entity with operational control of the Aircraft. (*Id.* ¶¶ 19-20.)[3] Plaintiffs allege under Federal Aviation Administration ("FAA") regulations, both Flight Options and Defendants had a duty to not operate the Aircraft without proper certification. (*Id.* ¶ 37.) Thus, Plaintiffs claim, the Charters violated FAA regulations because Defendants operated the Aircraft without the necessary certification, and Flight Options may be liable, as a secondarily liable party, for Defendants' allegedly illegal actions. (*Id.* ¶¶ 38, 40.) Therefore, Plaintiffs seek indemnity under Ohio common law should Flight Options be liable for damages caused by Defendants' alleged violations. (*Id.* ¶¶ 36, 40.)

Defendants removed this case to federal court on May 1, 2026, on the grounds the case involves a federal question. (Doc. 1.) A week later, Defendants filed a motion to dismiss for failure to state claim. (Doc. 5.) Plaintiffs then filed a motion to remand the action to state court. (Doc. 6.) The motion is fully briefed.[4] (Docs. 8, 12.)

## II. LEGAL STANDARD

Defendants may remove a case to federal court if the federal court has original

---

[3] Plaintiffs claim the Charter occurred without Flight Options' "knowledge, consent, or approval." (Doc. 1-2 ¶ 20.)

[4] In their opposition, Defendants also argue removal is proper because Plaintiffs' claims are compulsory counterclaims that should have been brought in the Contract Dispute. (Doc. 8 at 121.)

jurisdiction over the case. 28 U.S.C. § 1441(a). Federal courts have original federal-question jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case may arise under federal law if a "federal law creates the cause of action" or "'the vindication of a right under state law necessarily turned on some construction of federal law.'" *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808-09, 106 S. Ct. 3229, 92 L. Ed. 2d 650 (1986) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983)).

Federal jurisdiction must be apparent "on the face" of a "properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987) ("The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law."). However, "[t]here are exceptions to the well-pleaded complaint rule" including the substantial-federal-question doctrine. *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007). While the "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction," *Merrell Dow*, 478 U.S. at 813, "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005).

The removing defendant "bears the burden of demonstrating that the case as pled falls within the federal question jurisdiction of the district court." *Warthman v. Genoa Twp. Bd. of Trs.*, 549 F.3d 1055, 1061 (6th Cir. 2008) (citation omitted). "'[B]ecause lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts resolved in favor of remand.'" *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549-50 (6th Cir. 2006) (quoting

*Brown v. Francis*, 75 F.3d 860, 864-65 (3d Cir. 1996)).

## III. LAW AND ANALYSIS

In their Complaint, Plaintiffs allege Defendants do not hold an Air Carrier Certificate as required under 14 C.F.R. § 119.5. (Doc. 1-2 ¶ 19.) Therefore, Plaintiffs claim, the Charters "were violative of regulations established in 14 C.F.R. § 135, which apply to a 'person who engages in any operation governed by this part without an appropriate certificate and operations specifications required by part 119 of this chapter.'" (*Id.* (quoting 14 C.F.R. § 135.7).) 14 C.F.R. Part 135 "prescribes rules governing [] [t]he commuter or on-demand operations of each person who holds or is required to hold an Air Carrier Certificate or Operating Certificate under part 119 of this chapter." 14 C.F.R. § 135.1(a)(1). As relevant to the certification requirement, 14 C.F.R. Part 119 states in part:

> (a) A person authorized by the Administrator to conduct operations as a direct air carrier will be issued an Air Carrier Certificate.
> . . .
> (g) No person may operate as a direct air carrier or as a commercial operator without, or in violation of, an appropriate certificate and appropriate operations specifications. No person may operate as a direct air carrier or as a commercial operator in violation of any deviation or exemption authority, if issued to that person or that person's representative.
> . . .
> (l) No person may operate an aircraft under this part, part 121 of this chapter, or part 135 of this chapter in violation of an air carrier operating certificate, operating certificate, or appropriate operations specifications issued under this part.

14 C.F.R. § 119.5(a), (g), (l).

Defendants argue Plaintiffs' causes of action are a result of an alleged violation of FAA regulations and therefore this lawsuit arises under federal law. (Doc. 1 ¶ 16.) Defendants contend the lawsuit raises a disputed federal issue of whether the Charters were actually "illegal"

in violation of 14 C.F.R. Part 135[5] and the only way for Plaintiffs to prove their state claims "is by reference to, and showing a violation of, federal regulations." (*Id.* ¶ 24.) Next, Defendants claim the proper interpretation of an FAA regulation is "important" and will "resolve the case." (*Id.* ¶ 25 (citing *Mikulski*, 501 F.3d at 570.) Finally, Defendants contend the FAA regulations are "detailed, mandatory, and pervasive," and therefore remand is appropriate. (*Id.* ¶ 26.) Plaintiffs contend they have only asserted state-law claims and Defendants failed to meet their burden to prove there is a substantial federal question. (Doc. 6-1 at 102.)

"[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258, 133 S. Ct. 1059, 185 L. Ed. 2d 72 (2013). The parties dispute all four of these factors.[6] However, "[t]his pathway is a slim category that is to be read narrowly." *Est. of Cornell v. Bayview Loan Servicing, LLC*, 908 F.3d 1008, 1014 (6th Cir. 2018) (cleaned up).

**A. Necessarily Raised**

The issue to address is whether the resolution of an FAA regulation question is "necessary" to the case. *See Gunn*, 568 U.S. at 259. "For a federal issue to be necessarily raised,

---

[5] Defendants, who bear the burden on removal, fail to specify which subsection of Part 135 they believe is at issue. *See Warthman*, 549 F.3d at 1061. The Court will assume the relevant sections are those Plaintiffs have cited, namely the Air Carrier Certificate requirement under 14 C.F.R. § 119.5 and § 135.7.

[6] Both parties rely on the three-part test in *Mikulski*, which combines the first two *Gunn* factors into one. *Mikulski*, 501 F.3d at 568 ("The substantial-federal-question doctrine has three parts: (1) the state-law claim must necessarily raise a disputed federal issue; (2) the federal interest in the issue must be substantial; and (3) the exercise of jurisdiction must not disturb any congressionally approved balance of federal and state judicial responsibilities.").

'vindication of a right under state law [must] necessarily turn[ ] on some construction of federal law.'" *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 163 (3d Cir. 2014), *aff'd,* 578 U.S. 374, 136 S. Ct. 1562, 194 L. Ed. 2d 671 (2016) (quoting *Franchise Tax Bd.*, 463 U.S. at 9); *see also New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315 (2d Cir. 2016) ("A state-law claim 'necessarily' raises federal questions where the claim is affirmatively 'premised' on a violation of federal law.") (citation omitted). "Put in other terms, the disputed question of federal law must be a 'necessary element' of the state law claim, such that the state law claim" is actually a federal law claim. *Funderwhite v. Loc. 55, United Ass'n*, 702 F. App'x 308, 312 (6th Cir. 2017) (citation omitted).

Plaintiffs claim that neither their tortious interference claim nor their breach of contract claim reference any federal issue, statute, regulation, or agency. (Doc. 6-1 at 106-07.) They argue these claims "are premised upon the Agreement's exclusivity provision and whether Defendants' chartering of the aircraft breached that clause—not whether Defendants violated federal aviation regulations." (Doc. 12 at 141.) "Importantly, both Counts I and II can be decided . . . even if Defendants fully complied with federal aviation regulations when chartering the aircraft. Stated differently, it does not matter whether the charters were illegal; what matters is Defendants' marketing of the aircraft for charter (whether legally or illegally) is a violation of the Agreement's exclusivity provision." (*Id.*) As to the indemnity claim, Plaintiffs argue the FAA, not the Court, will be the one to determine if there has been any federal violation, after which the Court would only need to apply Ohio's indemnity common law, not any federal law, to determine whether Defendants must indemnify Flight Options. (Doc. 6-1 at 107.)

Defendants instead argue the crux of the litigation is whether the Charters were actually illegal under 14 C.F.R. Part 135. (Doc. 8 at 116.) The Agreement states Plaintiffs "will have the

exclusive right to market the Aircraft for charter *under 14 C.F.R. Part 135*." (*Id.* at 116; Doc. 1-2 at 26 (emphasis added).) Defendants claim the contract exclusivity "necessarily turns on whether those flights were 'Part 135' flights." (Doc. 8 at 117.) Therefore, Defendants argue, the tortious interference and breach of contract claims turn on a federal issue. (*Id.*) As for the indemnity claim, Defendants claim this cause of action explicitly references FAA regulations.[7] (*Id.*) However, Defendants do not dispute the FAA would make the determination of whether there has been a violation of FAA regulations.

As an initial matter, Plaintiff's Complaint does indeed reference federal regulations, particularly the Air Carrier Certificate requirement. (*See* Doc. 1-2 ¶¶ 19, 37.) However, mere references alone do not mean a federal issue is "necessarily raised." *See Hampton v. R.J. Corman R.R. Switching Co.*, 683 F.3d 708, 711 (6th Cir. 2012) (finding no substantial federal question where complaint references federal law). Instead, these references serve more as background for the indemnity claim. In Ohio, "[i]ndemnity arises from contract, either express or implied, and is the right of a person, who has been compelled to pay what another should have paid, to require complete reimbursement." *Ayers v. Cleveland*, 160 Ohio St. 3d 288, 156 N.E.3d 848, 853–54 (2020) (quoting *Worth v. Aetna Cas. & Sur. Co.*, 32 Ohio St. 3d 238, 513 N.E.2d 253, 256 (1987)). No federal issue is an essential element to proving an Ohio common law indemnity claim—that is provided for under state contract law. Therefore, no federal issue is "necessarily raised" for Plaintiffs' common law indemnity claim, the only portion of the Complaint that even references federal law.

---

[7] Plaintiffs agree the indemnity claim references federal regulations. (Doc. 6-1 at 107.)

As for Plaintiffs' breach of contract and tortious interference claims, the Complaint does not even reference federal regulations. Elements for a breach of contract claim in Ohio are "(1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach." *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012). Elements for tortious interference are "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages." *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St. 3d 415, 650 N.E.2d 863, 866 (1995). Neither of these claims require the application or interpretation of a federal regulation. Defendants' contention that Plaintiffs "define the wrongful conduct *exclusively* by reference to federal law" is completely without merit. (Doc. 8 at 119 (emphasis in original).) All of Plaintiffs claims rely heavily on the allegations that Defendants chartered the Aircraft in violation of the Agreement's exclusivity clause. (*See e.g.*, Doc. 1-2 ¶¶ 13-16, 24-26, 33.) The wrongful conduct, according to Plaintiffs, is the breach of exclusivity, not the violation of an FAA regulation. A state court could decide all three claims and the FAA's determination would not be implicated. At its heart, this is an action for a breach of contract, not for a violation of an FAA certification requirement. Therefore, no federal issue is "necessarily raised." *See Merrill Lynch*, 578 U.S. 374 at 393 (holding district court did not have jurisdiction when all claims "sought relief under state law and none necessarily raised a federal issue").

**B. Actually Disputed**

Whether a federal issue is actually disputed depends on whether the parties disagree as to the "validity, construction or effect" of the federal law or regulation. *Grable*, 545 U.S. at 313 (quoting *Shulthis v. McDougal*, 225 U.S. 561, 569, 32 S. Ct. 704, 56 L. Ed. 1205 (1912)). In

other words, "the parties must 'cross swords over' a federal issue such that *two competing interpretations* are asserted." *Funderwhite*, 702 F. App'x at 313 (6th Cir. 2017) (quoting *Mikulski*, 501 F.3d at 569) (emphasis added); *see also Columbia Gas Transmission, LLC v. Singh*, 707 F.3d 583, 589–90 (6th Cir. 2013) (finding no federal issue was actually disputed where the parties did not disagree "over the interpretation of the federal law").

Here, the parties do not dispute the validity of 14 C.F.R. Parts 135 and 119. It cannot be disputed 14 C.F.R. § 119.5 requires proper certification to operate an aircraft. Nor do the parties disagree an Air Carrier Certificate is required under Part 135. In fact, in their motion to dismiss, Defendants actually admit "[t]o operate an aircraft for commercial purposes—that is, under Part 135—across state lines, the operator must have an Air Carrier Certificate." (Doc. 5-1 at 45.) The parties do not proffer different interpretations of the regulations and therefore do not "cross swords" over any federal issue.

The parties' sole disagreement is the effect a violation or lack thereof has on Plaintiffs' claims. Defendants believe Plaintiffs' claims rise and fall on whether there has been a violation of 14 C.F.R. Part 135 (Doc. 8 at 117 ("Thus, whether Mr. Dwoskin tortiously interfered by procuring charters outside this exclusivity necessarily turns on whether those flights were 'Part 135' flights.")), whereas Plaintiffs claim the first two counts are independent of the federal regulation and the FAA will apply the federal regulation relevant to the indemnity claim (Doc. 12 at 141). This is a matter of contract interpretation, not FAA regulations. A state court is well equipped to determine whether the Agreement limited to the exclusivity clause to only flights which could be categorized at "Part 135" flights. That determination is not dependent on how Part 135 or 119 is interpreted. Because the parties do not disagree on how to interpret these FAA regulations, no federal issue is "actually disputed." *See Eastman*, 438 F.3d at 552 (finding no

substantial federal issue where "the meaning of the two statutes cited by the plaintiff is not in serious dispute in this case.").

### C. Substantial Federal Interest

Whether the federal interest is "substantial" turns on "the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. Plaintiffs contend that even if there were a federal question, it is not substantial because any federal violation would be determined by the FAA, the result of such determination will not resolve the case, and that determination will not control numerous other cases. (Doc. 6-1 at 108-09.) Defendants argue that Plaintiffs' reference to the Charters as "illegal" is indicative Plaintiffs can only prove their claims if there has been a violation of 14 C.F.R. Part 135. (Doc. 8 at 119-20.) Since "[f]ederal law and regulation completely dominate the field of aviation," the federal issue is substantial, Defendants urge. (*Id.* at 118.)

"The Supreme Court has identified four aspects of a case or an issue that affect the substantiality of the federal interest in that case or issue: (1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated)." *Mikulski*, 501 F.3d at 570 (citing *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700, 126 S. Ct. 2121, 165 L. Ed. 2d 131 (2006)).

*First Factor.* The first factor is easily addressed. No agency is a party to the action. Nor is there any dispute over whether an agency has complied with federal law. While the federal

government has an interest in "the uniform application of regulations that relate to" FAA regulations, "it has only a limited interest in private tort or contract litigation over the private duties involved . . . ." *Id.* This factor weighs against characterizing any federal interest as "substantial."

*Second Factor*. This factor "is far more subjective" and requires a determination of whether the federal "question to be resolved is important." *Id.* (citation omitted). The parties do not dispute that 14 C.F.R. Part 135 and 119 require proper certification. That issue does not need to be resolved. To the extent Defendants contend the federal question is whether the Charters violated 14 C.F.R. Part 135, that does not change the outcome of the analysis. (Doc. 8 at 116.) Whether Defendants violated FAA regulations "does not implicate any broader or more substantial issue. . . . and it will provide little if any precedent for future cases." *Mikulski*, 501 F.3d at 571.

*Third Factor*. This factor is more "objective" and asks whether resolution of the federal question would completely resolve the case. *Id.* at 571. As discussed, there is no dispute certification requirements fall under FAA regulations. This determination does not resolve any issue in the case. As to Defendants' question, if a court takes Defendants' approach, that is, there is no breach of contract or tortious interference if Defendants did not violate FAA regulations, then the question is dispositive. However, if a court uses Plaintiffs' approach, then resolving the question would not completely resolve the case because Plaintiffs would still need to prove all the elements for breach of contract and tortious interference. Resolving this question "may, but will not necessarily, conclude the action." *Id.*

*Fourth Factor*. This factor asks whether answering the federal question will control *numerous* other cases. *Id.* It will not. Even assuming there is a federal question to answer,

whether Defendants violated FAA regulations by failing to obtain necessary certification is not an issue that will likely affect or control future decisions. These requirements are not new, and Defendants have not argued any special circumstances apply such that this situation would set a unique precedent.

Taken in the most generous light, the only issue is whether the exclusivity clause is limited to a certain category of flights as described in a federal regulation. This would be squarely governed by interpretation of the Agreement, not a federal statute. *See Franchise Tax Bd.*, 463 U.S. at 9 ("We have often held that a case 'arose under' federal law where the vindication of a right under state law necessarily turned on some construction of federal law . . . .") (citations omitted). Allowing a state court to resolve these claims will not affect the FAA and its regulations, much less the "federal system as a whole." *Gunn*, 568 U.S. at 260.

Having considered these factors, the Court concludes that there is no substantial federal interest.

### D. Federal-State Balance

This final factor looks at the "balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. Defendants contend Plaintiffs' entire case turns on whether there was wrongful conduct in violation of FAA regulations, and therefore it would be "'nonsensical' to deny [Defendants] access to a federal forum." (Doc. 8 at 120.) Plaintiffs argue they do not assert a federal claim, and the "Court is not being called upon to interpret or apply any federal statutes or regulations." (Doc. 6-1 at 110-11.)

As discussed, there is no federal question, much less a substantial one. It follows that remanding this case to state court would not upset the federal-state balance. Simply because federal control is pervasive in aviation does not mean all cases tangentially involving FAA

regulations must be resolved in federal court. *See Gunn*, 568 U.S. at 264 ("We have no reason to suppose that Congress—in establishing exclusive federal jurisdiction over patent cases—meant to bar from state courts state legal malpractice claims simply because they require resolution of a hypothetical patent issue."). On the other hand, allowing this case to proceed in federal court could "drastically" upset this balance if garden-variety contract claims "could be converted into federal actions by the simple expedient of referencing federal law as the source of" those claims. *Eastman*, 438 F.3d at 553.

Defendants also argue the claims brought here are compulsory counterclaims that should have been brought in the Contract Dispute, which the Court has jurisdiction over. (Doc. 8 at 121.) Defendants claim Plaintiffs' choosing to file this action in state court is nothing more than "claim splitting and forum-shopping," and this threatens the federal-state balance more than removal. (*Id.*) In response, Plaintiffs state their claims are not compulsory counterclaims because they did not "have" the state-law claims at the time they filed responsive pleadings in the Contract Dispute. (Doc. 12 at 144 (citing *Marais v. JPMorgan Chase Bank, N.A.*, 676 F. App'x 509, 512 (6th Cir. 2017).) Instead, Plaintiffs claim to have only learned of the Charters while deposing a Dwoskin, Inc. representative, which occurred long after any responsive pleadings were filed in the Contract Dispute. (*Id.* at 145.)

It is not necessary to determine whether these claims would be compulsory counterclaims in the Contract Dispute. Even if they were, the Court cannot prevent Plaintiffs from bringing those claims in state court, even when considering federal-state balance.[8]

[8] However, if these counterclaims claims are in fact compulsory, Plaintiffs failed to timely raise them in the Contract Dispute, and they will be barred from bringing those claims again in federal court. *Tyler v. DH Cap. Mgmt., Inc.*, 736 F.3d 455, 459 (6th Cir. 2013).

> Section 2283 of Title 28 expressly prohibits the federal courts from granting injunctions to stay state-court proceedings "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." Clearly the language of Rule 13(a) cannot be construed as empowering the federal court to restrain state-court proceedings. Thus, if a party asserts a claim in a state court that should be a compulsory counterclaim in an already pending federal action, the federal court cannot enjoin the prosecution of the state proceeding. In this situation the general objective underlying Rule 13(a) of avoiding multiple suits is outweighed by the express statutory policy prohibiting federal interference with the functioning of state judicial systems. The result is that in the absence of voluntary restraint by one of the courts, both the federal and the state actions will proceed toward judgment and the first to reach that point will serve as the basis for asserting a defense of claim or issue preclusion in the action that still is being adjudicated.

6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1418 (3d ed. 2026); *see also Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*, 652 F.2d 852, 855 n.5 (9th Cir. 1981) ("Rule 13(a) has been held not to create an express statutory exception to the proscriptions of s 2283 and, accordingly, a federal court is barred by s 2283 from enjoining a party from proceeding in state court on a claim that should have been pleaded as a compulsory counterclaim in a prior federal suit."). "[L]itigants are free to split their claims between state and federal court and 'race to the first judgment,' even if that stratagem is ill-advised and inefficient." *Quality Assocs., Inc. v. The Procter & Gamble Distrib. LLC*, 949 F.3d 283, 289 (6th Cir. 2020).

Assuming Defendants correctly argue remanding these compulsory counterclaims (if that is what they are) weighs against federal-state balance, that is insufficient to overcome the "express statutory policy prohibiting federal interference with the functioning of state judicial systems." 6 Wright & Miller, *supra*, § 1418.

## IV. CONCLUSION

For the reasons stated herein, Plaintiffs' Motion to Remand (Doc. 6) is GRANTED. All other pending motions are DENIED as moot. This case is hereby REMANDED to the Cuyahoga

County Court of Common Pleas.

**IT IS SO ORDERED.**

Date: October 19, 2026

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE